IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

THALUS MARK LADNER                                                  PLAINTIFF

VS.                                                  CIVIL ACTION NO. 1:18-cv-185-FKB

NANCY A. BERRYHILL, ACTING COMMISSIONER                  DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

---

## MEMORANDUM OPINION AND ORDER

This cause is before the Court regarding the appeal by Thalus Mark Ladner of the Commissioner of Social Security's final decision denying his application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. § 423(d)(1)(A). In rendering this Memorandum Opinion and Order, the Court has carefully reviewed the Administrative Record [10] regarding Ladner's claims (including the administrative decision, the medical records, and a transcript of the hearing before the Administrative Law Judge ("ALJ")), Plaintiff's Brief [15], and Defendant's Motion to Affirm [19] and Memorandum [20]. Plaintiff did not file a rebuttal. The parties have consented to proceed before the undersigned United States Magistrate Judge, [11], [12], and the District Judge has entered an Order of Reference [13]. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

For the reasons discussed in this Memorandum Opinion and Order, the undersigned finds that the Commissioner's decision should be affirmed.

### I. PROCEDURAL HISTORY

The Social Security Administration denied Ladner's claims initially and on

reconsideration. [10] at 61, 71-77.[1] In his application, Ladner alleged that he was disabled as of December 4, 2014, because of a back injury, degenerative spinal stenosis, the need for bilateral hip replacement surgery, and arthritis. *Id.* at 62. At a March 20, 2017, hearing before an Administrative Law Judge ("ALJ"), Ladner amended his onset date to December 1, 2015. *Id.* at 10. After considering the record, the ALJ determined that Ladner was not disabled from December 1, 2015, through the date of the decision, May 24, 2017. *Id.* at 21. The ALJ concluded that Ladner could return to his past relevant work as a probation officer. *Id.* at 19. Alternatively, and with the aid of a vocational expert, the ALJ identified other jobs Ladner could perform. *Id.* at 20. The Appeals Council denied Ladner's request for review on April 5, 2018, *id.* at 1, and this appeal followed.

## II. WORK AND MEDICAL HISTORY

Plaintiff was born on August 10, 1977, and was thirty-nine years old at the time of the ALJ's May 24, 2017, decision. *Id.* at 20. He finished the twelfth grade and completed one semester of college. *Id.* at 14. When he stopped working in November 2015, he was employed as a security guard. *Id.* His other past relevant work experience includes work as a probation officer, a deputy sheriff, and a rough neck. *Id.* at 19. Ladner's earnings record shows that he will remain insured through December 31, 2019. *Id.* at 11.

A brief review of the medical records will aid in the consideration of the case. Ladner experienced a work-related back injury in June 2012, while he was working as a probation officer. *Id.* at 14. After a course of conservative treatment, including lumbar injections, Ladner

---

[1] Citations reflect the original pagination of the administrative record.

underwent total laminectomies at L4 and L5 and a discectomy at left L4-5 in March 2015. *Id.* In June 2015, Ladner's treating neurosurgeon released Plaintiff from his care and to work without restrictions. *Id.* at 14, 549, 638.

However, in July 2015, his neurosurgeon also referred him to a rheumatologist for diagnosis and treatment. *Id.* at 15. Ladner tested mildly positive for rheumatoid arthritis. *Id.* at 486, 497, 520. After trying other medications, the doctor treated Ladner with Humira. *Id.* at 15. The record indicates that by June 2016, Ladner was 50 percent better. *Id.* at 497. At examinations in June and October 2016, the doctor found no peripheral edema. *Id.* at 487, 498. However, an August 2016 x-ray of his pelvis showed severe dysmorphic changes in both hips. *Id.* at 435. Findings also included "severe flattening of the bilateral femoral heads, likely related to previous osteonecrosis" and "bilateral acetabular dysplasia." *Id.*

Ladner sought treatment from a pain management physician from August 2016 to January 2017. *Id.* at 15; 430-472. An August 2016 MRI of his lumbar spine concluded that Ladner was "status post bilateral laminectomy at L4-L5 with left posterior disc extrusion and associated spurs producing apparent impingement of the left L5 nerve root with displacement but no definite compression of the right L5 nerve root." *Id.* at 372. The report went on to state that Ladner was "status post bilateral L5-S1 laminectomy with posterior central disc protrusion but no definite neural impingement." *Id.* In January 2017, Ladner reported lower back pain that occasionally radiated into both buttocks, both hips, and both legs, with marked severity, that was made worse with physical activity. *Id.* at 430, 433. Overall, he reported that his pain was worsening, but there had been moderate improvement with physical therapy, some pain management, muscle relaxants, and other over-the-counter medications. *Id.* at 430. Ladner

reported that his activities of daily living, self-care, social activities, and recreation had been impacted considerably, but the doctor noted that he did not use any assistance device for ambulation. *Id.* Ladner also reported that he did light household chores, cut the grass, wrote checks, drove, and shopped for groceries. *Id.* Ladner stated that he needed pain medications so that he could work comfortably. *Id.* An examination at that time revealed arthralgias, myalgias, joint stiffness and limb pain, but no limb swelling. *Id.* at 433. After examining Ladner and interpreting x-rays of his pelvis, the doctor concluded that Ladner had Perthe's disease of the hips, failed back syndrome, sacroiliitis, and lumbar facet syndrome. *Id.* at 435.

### III. DECISION

In his May 24, 2017, decision, the ALJ evaluated Ladner's impairments using the familiar sequential evaluation process[2] and found that he has the severe impairments of status post L4-5 and L5-S1 laminectomies, hip osteonecrosis, left hip bursitis, lumbar facet arthropathy, and

---

[2] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

rheumatoid arthritis, citing 20 C.F.R. § 404.1520(c). *Id.* at 13. The ALJ specifically considered whether Ladner met the requirements of Listing 1.04, Disorders of the Spine, and found that he did not. *Id.* After considering the evidence, the ALJ concluded that Ladner has the RFC to perform light work, except that "he can lift twenty pounds occasionally and ten pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for no more than four hours in an eight-hour workday with walking on even surfaces only; and push and pull as much as can lift and carry." *Id.* The ALJ went on to state that Ladner can "climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, stoop frequently, kneel frequently, crouch frequently, and never crawl. He can never work at unprotected heights and occasionally work near moving mechanical parts." *Id.*

As a part of his decision, the ALJ considered the opinions of several medical professionals, both examining and non-examining, and accorded them various weights. *See id.* at 16-17. The ALJ also considered any limitations and recommendations by Plaintiff's treating physicians. *Id.* at 17. The ALJ accorded great weight to the April 2015 opinion of a consultative examiner and the May and June 2015 opinions of non-examining Department of Disability Services physicians. *See id.* at 16, 62, 71, and 355. He gave great weight to Ladner's pain management doctor's recommendations regarding workplace safety and lifting. *Id.* at 17. However, he gave little weight to the opinion of Ladner's neurosurgeon, who stated that Ladner could return to work with no restrictions. *Id.* The ALJ gave little weight to the August 2015 opinion of a PERS Disability examiner/physician who found Ladner to be permanently disabled because her opinion was based on Plaintiff's subjective complaints and her findings were vague. *Id.* at 17, 676-679. The ALJ gave little weight to the opinion of an examining physical therapist

because the physical therapist determined that Ladner could lift and carry greater weight than did the ALJ. *Id.* at 17, 360.

The ALJ concluded that Ladner is capable of performing his past relevant work as a probation officer, a skilled job with a specific vocational preparation level of seven, performed at a light level of exertion. *Id.* at 19. Alternatively, with the aid of a vocational expert, the ALJ identified other jobs that Ladner could perform. *Id.* at 20-21. The ALJ identified the jobs of gate guard, booth cashier, and storage facility clerk, all considered light with varying skill and vocational preparation levels. *Id.* Thus, the ALJ found that Ladner was not under a disability from December 1, 2015, to May 24, 2017, the date of the decision. *Id.* at 21.

## IV. STANDARD OF REVIEW

The Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d

552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

## V. DISCUSSION OF THE ALLEGED ERRORS AND APPLICABLE LAW

Plaintiff argues that the ALJ's decision should be reversed and remanded for an award of benefits, or, alternatively, for further consideration based on the following reasons:

1. Did the ALJ err when he failed to properly consider all of the evidence of the record?

   a) Did the ALJ improperly consider the plaintiff's upper extremity impairments?

   b) Did the ALJ improperly consider the plaintiff's lumbar spine impairments?

2. Did the ALJ err when he gave a non-examining physician's opinion great weight while the non-examining physicians did not have the benefit of material evidence?

[15] at 3.

A. <u>Did the ALJ improperly consider Ladner's upper extremity impairments?</u>

Plaintiff argues that the ALJ failed to incorporate any manipulative limitations into the RFC, therefore the RFC is not supported by substantial evidence. Plaintiff points to the physical therapist's determination that Ladner should only occasionally engage in jobs requiring a handgrip and pinch grip, Ladner's complaints of swelling and joint pain in his hands and wrist, and Ladner's left shoulder osteoarthritis to argue that the ALJ should have included upper

extremity restrictions in the RFC. *See* [10] at 362, 471, 515. Plaintiff also asserts that because the ALJ restricted him to four hours of standing, he has essentially limited him to unskilled sedentary jobs, which generally require bilateral manual dexterity.

"[T]he ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). While light work necessarily includes the ability to do sedentary work, the record supports the ALJ's decision not to include upper extremity restrictions in the RFC. *See* 20 C.F.R. § 416.967(b). Plaintiff points to evidence to support his argument, but there is other substantial evidence in the record that supports the ALJ's determination not to include manipulative restrictions in the RFC. In April 2015, a consultative examining physician found Ladner's hands and fingers to be within normal limits. [10] at 358. Ladner's ability to grip and hold objects remained intact. *Id.* In February 2015, his neurosurgeon found full range of motion without instability in both upper extremities, and normal strength and tone in his arms and hands. *Id.* at 317. In September 2015, the evaluating physical therapist found that Ladner could occasionally push/pull eighty pounds on both his right and his left, occasionally hand grip eighty pounds on his right and eighty-five pounds on his left, and occasionally pinch grip fourteen pounds on his right and nine pounds on his left. *Id.* at 362. Moreover, in his March 2015 Function Report, Plaintiff did not state that his illnesses, injuries, or conditions affected the use of his hands. *Id.* at 225. While his pain management doctor noted joint stiffness and limb pain, some swelling and tenderness in his hands with a partially incomplete grip, and restricted range of motion in his shoulders, he did not include these conditions in his assessments of plaintiff's condition in January 2017. *Id.* at 435.

In sum, "the evidence presents conflicting testimony and reports that must be evaluated

by their credibility. The Secretary, not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case." *Chaparro v. Bowen*, 815 F.2d 1008, 1010 -1011 (5th Cir. 1987). As in *Chaparro,* the Court finds "nothing to criticize in how the Secretary weighed the evidence and determined the case." *Id.* at 1011. Accordingly, the ALJ's decision on RFC is supported by substantial evidence, and no reversible error on this issue exists.

B. Did the ALJ improperly consider the plaintiff's lumbar spine impairments?

Plaintiff argues that he meets the criteria for Listing 1.04, disorders of the spine. The relevant portion of the listing states, as follows:

> 1.04 Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Ch. III, Pt. 494, Subpt. P, App. 1. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

While Plaintiff meets some of the criteria, he does not meet all of the specified medical criteria. Ladner exhibited limitation of motion of the spine, *see, e.g.,* [10] at 677, and a positive straight-leg raising test. *See, e.g., id.* at 641, 677. On the other hand, it does not appear that he meets the nerve root compression criteria. [10] at 372. His August 2016 MRI concluded that

Lader was "[s]tatus post bilateral laminectomy at L4-L5 with left posterior disc extrusion and associated spurs producing apparent impingement of the left L5 nerve root with displacement but *no definite compression* of the right L5 nerve root." *Id.* (emphasis added). Additionally, no medical professional has documented that Ladner has experienced the requisite motor loss accompanied by sensory or reflex loss. Instead, the medical record shows full motor strength and normal muscle tone and bulk. *See id.* at 358, 470, 559, 664, 667. In November 2016, his pain management doctor commented that he had no weakness in his lower extremities. *Id.* at 440. The record also shows intact sensation. *See, e.g. id.* at 358, 470. Accordingly, because the evidence demonstrates that Ladner did not meet all of the criteria for Listing 1.04, the ALJ's decision on this issue is supported by substantial evidence and must be upheld.

    C. <u>Did the ALJ err when he gave a non-examining physician's opinion great weight while the non-examining physicians did not have the benefit of material evidence?</u>

Plaintiff argues that the ALJ erred when he placed great weight on the opinions of the two state Disability Services non-examining physicians because their opinions, issued in May and June 2015, did not have the benefit of the significant findings of later-obtained tests. In particular, Plaintiff points out that these non-examining physicians did not have access to his August 2016 MRI which shows that he suffers from "apparent impingement of the left L5 nerve root with displacement," and his August 2016 x-ray of his hips, which shows "[s]evere dysmorphic changes" resulting in "severe flattening of the bilateral femoral heads. . ." in both hips. *Id.* at 372, 435. Thus, Plaintiff argues that the RFC is not based on substantial evidence and must be overturned.

"However, the task of weighing the evidence is the province of the ALJ. [The Court's]

job is merely to determine if there is substantial evidence in the record as a whole which supports the ALJ's decision." *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). While it is true that the state agency non-examining physicians did not have access to the later-obtained tests when they composed their opinions, the ALJ's decision demonstrates that he considered the medical records and various medical opinions, according them varying weights and explaining his reasoning behind his decision. In other words, the ALJ did not rely solely on the opinions of the state agency non-examining physicians. Instead, he considered the evidence, including the August 2016 MRI and x-rays, in reaching his decision. *See* [10] at 15. Thus, the ALJ's RFC's determination is supported by substantial evidence, and there is no basis to reverse the decision.

## VI. CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, the Commissioner's decision is hereby upheld, and this case is dismissed with prejudice. A separate judgment will be entered. Fed. R. Civ. P. 58.

SO ORDERED, this the 23rd day of September, 2019.

      /s/  F. Keith Ball  
      UNITED STATES MAGISTRATE JUDGE